# EXHIBIT A

# STATE COURT COMPLAINT

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
MONROE COUNTY, GEORGIA

**SUCV2021000408**

OCT 08, 2021 11:52 AM

*Lindsey Taylor*
Lindsey Taylor, Clerk
Monroe County, Georgia

## IN THE SUPERIOR COURT OF MONROE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| BENJAMIN BOWDOIN and WILLIAM BOWDOIN, Individually and as the Surviving Children of TONY MARVIN BOWDOIN and BENJAMIN BOWDOIN, as Executor of the Estate of Tony Bowdoin | ) ) ) ) ) | CIVIL ACTION FILE NO. _____ |
| Plaintiffs, | ) ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) | |
| GEORGIA POWER COMPANY, | ) ) | |
| Defendant. | ) | |

## COMPLAINT

COME NOW Benjamin Bowdoin and William Bowdoin, Individually and as the Surviving Children of Tony Marvin Bowdoin, and Benjamin Bowdoin as Executor of the Estate of Tony Bowdoin and file this Complaint seeking damages for the wrongful death of Tony Bowdoin and for property damage.

Tony Bowdoin lived at or near 175 Bowdoin Road, Juliette, Georgia 31046 ("Bowdoin Property") his entire life. He lived near Robert W. Scherer Electric Generating Plant ("Plant Scherer") and relied on well water for his basic living activities such as drinking, bathing, cleaning, and irrigation. Georgia Power Company ("Defendant" or "Georgia Power") owns and operates Plant Scherer, the most powerful coal-fired power plant in North America. The plant is a known and extreme polluter. The plant's operations rely on a pond that stores over 15 million tons of toxic coal ash. The pond is unlined. Thus, the coal ash leaches into the groundwater that flows straight to the Bowdoin Property. The coal ash poisoned Tony Bowdoin and damaged the Bowdoin Property. Tony Bowdoin suffered from colon cancer until he succumbed to death as a result of that cancer on February 24, 2021.

Benjamin and William Bowdoin are the current joint owners of the Bowdoin Property and hereby file this Complaint seeking damages against Georgia Power for the unlawful nuisance and trespass upon their property.

Plaintiffs show the Court as follows:

## INTRODUCTION

1.    This action for damages arises out of Georgia Power's prior and continuing release, discharge, and deposit of toxins into the groundwater and air that has caused extreme damage to Plaintiffs.

2.    Georgia Power initially disrupted the environment around its Robert W. Scherer Electric Generating Plant ("Plant Scherer") when it created a man-made lake ("Lake Juliette") to enable the Plant's operations.

3.    Georgia Power exacerbated and continued its pollution activities by unlawfully discharging toxic heavy metals and radionuclides from coal ash into the air and an unlined pond located at Plant Scherer, which led to the release and migration of pollutants into the groundwater and air on the Bowdoin Property.

## PARTIES

4.    Tony Marvin Bowdoin died as a result colon cancer.

5.    At the time of his death, Tony Bowdoin was unmarried.

6.    William Bowdoin is a citizen of the state of Georgia, residing at 95 West Lake Dr. Athens, GA 30606.  He submits to the jurisdiction of this Court.

7.    Benjamin Bowdoin is a citizen of the state of Georgia, residing at 515 King Avenue, Athens, Georgia 30606.  He submits to the jurisdiction of this Court.

8.      Benjamin Bowdoin is the Executor of the Estate of Tony Bowdoin.  As Executor, he submits to the jurisdiction of this Court.

9.      William and Benjamin Bowdoin are the only children of Tony Marvin Bowdoin.

10.     William and Benjamin Bowdoin are joint owners of the property located at 175 Bowdoin Road, Juliette, Georgia 31046.

11.     Georgia Power Company is a corporation formed under the laws of the State of Georgia, and whose principal office address is 241 Ralph McGill Boulevard NE, Atlanta, Fulton County, Georgia 30308.

12.     Georgia Power has owned and operated Plant Scherer, located in Monroe County, Georgia, during all times relevant to the matters described and claims asserted in this Complaint.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action and has personal jurisdiction over Defendant in this action.

14.     Venue is proper in this Court.

## FACTUAL BACKGROUND

### Plant Scherer

15.     Georgia Power owns and operates Plant Scherer, a 12,000-acre coal-fired power plant located in Juliette, Georgia.

16.     Georgia Power built Lake Juliette in 1980 to provide a dependable reservoir of water for Plant Scherer's operations.

17.     Plant Scherer is named after Robert W. Scherer, a former chairman and chief executive officer of Georgia Power.

18.     Plant Scherer consists of four units, each with a rated capacity of 945 megawatts.

19.    The first unit was brought online in 1982.  The other units were brought online in 1984, 1987, and 1989, respectively.

20.    Plant Scherer is the most powerful coal-fired power plant in North America.  It is the fourth-largest electric generating plant in the United States, and the largest to be fueled exclusively by coal, according to the U.S. Energy Information Administration.

21.    According to the U.S. Environmental Protection Agency, Plant Scherer is the top single emitter of Greenhouse Gas emissions among all United States power plants, averaging over 20 million tons per year through at least 2018.

22.    Plant Scherer burns coal for the purpose of generating energy.  Lake Juliette provides water to make steam, which generates the electricity.  Coal is burned to heat the water into steam.

23.    Georgia Power purchases coal for use at Plant Scherer from the Powder River Basin in Wyoming.

24.    Coal from the Powder River Basin contains elements that include toxic heavy metals and radionuclides.  It is known in the industry as the cheapest and dirtiest coal available.

**Coal ash**

25.    Georgia Power generates large quantities of coal ash when it burns coal to generate energy at Plant Scherer.

26.    Coal ash, also referred to as coal combustion residuals or CCRs, is produced primarily from the burning of coal in coal-fired power plants.  Coal ash includes a number of by-products produced from burning coal, including fly ash, bottom ash, boiler slag, and flue gas desulfurization material.  This Complaint uses the term "coal ash" to refer to all the material mentioned in this paragraph.

27.     Coal ash contains materials that are known carcinogens and neurotoxins, including, but not limited to, arsenic, barium, boron, cadmium, chromium VI (hexavalent chromium), copper, gross alpha and beta emissions, lead, lithium, manganese, mercury, molybdenum, nickel, radium, radon, selenium, thallium, and uranium.

28.     The risks to humans associated with exposure to these toxins from coal ash include elevated probabilities of cancer, neurological and psychiatric effects, cardiovascular effects, immune system damage, liver damage, kidney damage, decreased thyroid function, birth defects, developmental disabilities, respiratory system effects, damage to blood vessels, anemia, skin disorders, bone sarcomas, carcinomas of the paranasal sinuses and mastoid process, and other acute and chronic toxic reactions.

## Coal Ash Pond

29.     Georgia Power disposes of Plant Scherer's coal ash in, among other places, a 776-acre pond located on the campus of Plant Scherer ("Coal Ash Pond").

30.     The Coal Ash Pond is unlined and contains roughly 15.7 million tons of coal ash, much of which is located beneath the groundwater table, which is the area from which groundwater flows.

31.     The Coal Ash Pond is located in close proximity to the Bowdoin Property.

32.     Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach toxic metals and radionuclides into the groundwater.

33.     Coal ash has and continues to leach from the Coal Ash Pond.

34.     This leaching occurs via groundwater infiltrating the unlined basin of the Coal Ash Pond.  The groundwater flow carries the toxins from the coal ash to the groundwater on the Bowdoin Property.

**The location of Georgia Power's monitoring wells evades representative results**

35.     Georgia Power has set up various monitoring wells supposedly to monitor water conditions as a result of the operation of Plant Scherer, including the use of the Coal Ash Pond. But the locations of these wells and the depth of the well screens are insufficient to properly monitor contaminants leaching from the unlined Coal Ash Pond to the groundwater.

36.     The monitoring wells are located horizontally adjacent to the Coal Ash Pond, but groundwater flow is vertical from the Coal Ash Pond to the bedrock aquifer, which is the underground rock through which groundwater travels to reach streams, lakes, rivers, and the well located on the Bowdoin Property.

37.     The monitoring well screens, which are filters that allow water to enter the pipes, are placed above the bedrock aquifer.  Thus, they are not within the flow from the Coal Ash Pond.

38.     Well screens would need to be located below 380 feet mean sea level (MSL) to properly detect groundwater contaminant plumes generated by toxic metals and radionuclides leaching from the Coal Ash Pond.  All of Georgia Power's well screens are above the minimum elevation of 380 MSL.

**Undisturbed naturally occurring environmental constituents
in Monroe County would not be toxic**

39.     In 1977, prior to the establishment of Plant Scherer and Lake Juliette, the U.S. Geological Survey conducted background monitoring of 42 wells in Monroe County, Georgia.

40.     The results of that monitoring indicated that uranium concentrations in all 42 wells, with the exception of one, were all well below the U.S. Environmental Protection Agency's maximum contaminant level (MCL) of 30 ppb (parts per billion), and the vast majority

of the wells showed levels below the minimum detection limit of 0.1 ppb.  The sole exception

was a well in the southern part of the county that tested at 62.3 ppb.

      41.    The source for these low levels of uranium is a naturally occurring mylonite

geologic deposit.

      42.    Georgia Power should have known that naturally occurring uranium is associated

with the mylonite deposit, and that the uranium would become more soluble and mobile if the

pH balance of the environment is disrupted.

      43.    Georgia Power's construction of Lake Juliette disrupted the pH balance in the

environment.

      44.    The establishment of Lake Juliette increased the local pH in the groundwater from

slightly acidic conditions in 1977 (pH ranging from 6-6.8) to the current basic conditions (pH of

7.4).

      45.    The increased pH level has increased the solubility of the naturally occurring

uranium from the mylonite deposit.

      46.    The uranium concentrations have significantly increased from the levels measured

in 1977.  Between 2010-2019, the University of Georgia tested 40 wells in locations similar to

those tested in 1977 and found that the uranium concentrations ranged from 30.1 ppb to 6,297

ppb.  All 40 wells tested orders of magnitude above the U.S. Environmental Protection Agency's

maximum contaminant level of 30 ppb.

### Contamination of water and air

      47.    Since the inception of Plant Scherer and the Coal Ash Pond, and continuing

today, Georgia Power has owned and operated Plant Scherer in such a negligent, reckless, and

otherwise unlawful manner so as to allow, through its acts and omissions, the discharge, release,

seepage, deposit, and emission of toxins into the well water, air, and otherwise onto the Bowdoin Property.

48.    Georgia Power has and continues to unlawfully release, discharge, and deposit toxins from the Coal Ash Pond at Plant Scherer into the local well water.

49.    Georgia Power's operation of Plant Scherer creates harmful air emissions of uranium, radionuclides, chromium, cadmium, vanadium, cobalt, strontium, boron, and nickel, which impacts residents in Juliette and Forsyth, Georgia through inhalation and contamination by shallow soil deposits during rain events.

50.    Toxins from Plant Scherer are present in the well water located on the Bowdoin Property above the U.S. Environmental Protection Agency's maximum contaminant levels and tap water screening levels, including, but not limited to lithium, uranium, chromium VI (hexavalent chromium), gross alpha radiation, gross beta particle activity, radium-226, radium-228, and radon-222.

51.    The detected toxins in the well water and groundwater are the result of contamination from Georgia Power operations at Plant Scherer and Lake Juliette.  The contaminants are not from naturally occurring constituents in the soils, bedrock, surface streams, and groundwater in Monroe County, with the exception of uranium, which until Georgia Power disturbed the environment and changed the pH level, occurred in levels well below the U.S. Environmental Protection Agency's maximum contaminant level for health standards in groundwater.

52.    During life, Tony Bowdoin obtained his drinking water from the groundwater wells where unsafe levels of contaminants are found.  Tony Bowdoin also used water from these wells to cook, clean, water his gardens and lawns, and in other household activities.

53.     Tony Bowdoin was exposed to the toxins created by Georgia Power's operations at Plant Scherer and Lake Juliette.

54.     Georgia Power provided Tony Bowdoin no warning that activity from Plant Scherer and the existence of the unlined Coal Ash Pond regularly exposed him to toxic substances, which he inhaled and ingested.

55.     In fact, Georgia Power has made affirmative statements that the operations at Plant Scherer and its use of the Coal Ash Pond do not pose any danger to any resident living near Plant Scherer.

56.     Georgia Power has made affirmative statements that the operations at Plant Scherer do not affect the groundwater of Juliette residents.

57.     The release, discharge, and deposits of toxins into the environment and onto the Bowdoin Property was foreseeable and preventable.  Georgia Power knowingly released, discharged, and deposited toxins into the environment and was aware that in so doing, it was likely injuring local residents and property owners, such as Plaintiffs.

58.     The rate of cancer incidences and death in Monroe County is higher than surrounding counties and is above state and national averages.

59.     For example, the national rate of cancer occurrence from 2011-2015 was 439.2 cases per 100,000 people (National Cancer Institute) and the state rate of cancer occurrence in the same time period was 469.2 per 100,000 people (Georgia Department of Public Health). Thus, with a population of roughly 26,000, Monroe County should have expected to see approximately 118 incidents of cancer during the same time periods.  Yet from 2011-2015, the rate of cancer incidence in Monroe County was more than double that number at 269 incidents

(Georgia Department of Public Health)—more than double both the state and national cancer rates.

60.     The discharges, releases, and deposits caused by the acts and omissions of Georgia Power have caused the Bowdoin Property, including well water located thereon, to be exposed to highly toxic and hazardous coal ash and have caused damage to the natural resources and environment in and around the Bowdoin Property, thereby causing Plaintiffs to incur damages.

61.     As a result of Georgia Power's releases, discharges, and deposits of toxic and hazardous substances into the areas surrounding Plant Scherer, Plaintiffs have suffered damages.

62.     Tony Bowdoin suffered from colon cancer.  He was diagnosed in or around September of 2019 with stage IV colon cancer.

63.     Tony Bowdoin was continuously on medication and underwent treatment, including chemotherapy, until the time of his death.

## COUNT I – NEGLIGENCE

64.     Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

65.     O.C.G.A. § 44-8-1 places an affirmative duty on landowners concerning running water, such that a landowner may not "use or adulterate it as to interfere with the enjoyment of it by the next owner."

66.     Defendant was negligent as a landowner by adulterating groundwater through the disposal of toxic and hazardous materials and other Plant Scherer operations so as to interfere with the enjoyment of groundwater and air by Benjamin and William Bowdoin.

67.     Defendant was negligent in its construction of Lake Juliette.

68.     Defendant was and is negligent in the method by which it disposes of coal ash at Plant Scherer.

69.     Defendant was negligent in the construction of the Coal Ash Pond by failing to install a liner in spite of the significant known risk that left unlined, the Coal Ash Pond could release, discharge, and deposit pollutants through groundwater running beneath or through Plant Scherer to other landowners such as Benjamin and William Bowdoin.

70.     Defendant was negligent in the use and maintenance of the Coal Ash Pond by dumping millions of tons of coal ash there and causing the toxic concentration of leachate that far exceeds safe levels.

71.     Defendant was and is negligent in the maintenance of the Coal Ash Pond by allowing significant discharge of coal ash pollutants therefrom into the groundwater and air located in the vicinity of Plant Scherer.

72.     Defendant knew or should have known that its activities would have toxic, poisonous, and highly deleterious effects upon the health of persons inhaling, ingesting, or otherwise absorbing the waste generated at Plant Scherer.

73.     Defendant breached its duty to Tony Bowdoin by disposing of toxic materials in the unlined Coal Ash Pond and allowing toxic and hazardous material to contaminate the natural resources of nearby residents, which Defendant knew, or should have known, would foreseeably cause Tony Bowdoin to come into contact with, or otherwise be exposed to, the toxic substances.

74.     Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to coal ash and other toxins to Tony Bowdoin, who would reasonably and foreseeably come into contact with or be harmed by the toxic materials.

75. Defendant recklessly and negligently failed to fully and properly test, analyze, and study the constituents of the coal ash and other toxins so as to fully understand the hazards associated with disposing these materials in the unlined Coal Ash Pond.

76. Defendant, as property owner and operator of Plant Scherer, has a duty to use its land in a manner that does not injure other landowners.

77. Defendant has breached this duty by failing to maintain the property at Plant Scherer in a manner that would not result in ongoing damage to Tony Bowdoin's health and to Benjamin and William's property.

78. Defendant has breached this duty by failing to manage pollutant discharges and other toxins in a manner that does not cause damage to the Bowdoin Property and Benjamin and William's property rights.

79. Defendant's failure to maintain its property and its actions and/or omissions in the course of the operation, maintenance, development, and/or construction activities at Plant Scherer has resulted in the severe adulteration and degradation of waters which flow onto the Bowdoin Property and into the watercourses located thereon and thereby interfere with Benjamin and William's traditional recreational, aesthetic, and residential uses of the Bowdoin Property.

80. Defendant's activities as alleged herein are a cause in fact and a proximate cause of the damages which Plaintiffs have suffered.

81. As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Tony Bowdoin suffered death.

82. These injuries caused Tony Bowdoin's Estate to incur funeral expenses. Benjamin Bowdoin, as Executor of his father's Estate, is entitled to recover these costs.

83.    Benjamin Bowdoin and William Bowdoin, as the surviving children of Tony Bowdoin, bring this action to recover the full value of Tony Bowdoin's life.

84.    Defendant is liable for Tony Bowdoin's death.

85.    As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Benjamin and William Bowdoin have incurred property damages, including diminution of value and the cost of restoration and repair of the Bowdoin Property.

86.    Benjamin and William Bowdoin are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of the Bowdoin Property resulting from Defendant's actions as alleged herein.

## COUNT II – NEGLIGENT FAILURE TO WARN

87.    Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

88.    At all times relevant to the matters described herein, Defendant has owned, operated, and exercised exclusive control over the operations of Plant Scherer.

89.    Defendant's operation of Plant Scherer includes the generation of large quantities of coal ash, which contain toxic heavy metals and radionuclides that pose significant dangers and risks to human health, including Tony Bowdoin's health.

90.    Defendant knew or should have known that disposal of large quantities of coal ash in the Coal Ash Pond, which remains unlined to date, would leach toxic heavy metals and radionuclides into the groundwater where Tony Bowdoin obtained his drinking water from the private groundwater well on the property where he resided.

91.    Given the likelihood of contamination arising from Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond, Defendant had a duty

to investigate the extent of the discharge, release, seepage, deposit, and emission of pollutants into the groundwater and warn Plaintiffs of such toxic exposures.

92.     At all times relevant, unsafe levels of toxic contaminants were in the groundwater located on the Bowdoin Property.

93.     Defendant breached its duty to Plaintiffs by providing no warnings that releases, discharges, and deposits from Plant Scherer and the Coal Ash Pond regularly exposed Tony Bowdoin and the Bowdoin Property to toxic heavy metals and radionuclides.

94.     Any adequate warning would have minimized, reduced, and/or avoided the foreseeable and preventable risk of harm posed by Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond.

95.     If Defendant provided adequate warnings, Tony Bowdoin could have taken necessary steps to prevent further harm and exposure to the unsafe levels of toxic contaminants found in his well and groundwater.

96.     Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to coal ash and other toxins to Tony Bowdoin who would reasonably and foreseeably come into contact with or be harmed by the toxic heavy metals and radionuclides.

97.     Defendant's failures, actions, and/or omissions at Plant Scherer and the Coal Ash Pond are a cause in fact and a proximate cause of Plaintiffs' damages.

98.     As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Tony Bowdoin suffered death.

99.     These injuries caused Tony Bowdoin's Estate to incur funeral expenses. Benjamin Bowdoin, as Executor of his father's Estate, is entitled to recover these costs.

100.    Benjamin Bowdoin and William Bowdoin, as the surviving children of Tony Bowdoin, bring this action to recover the full value of Tony Bowdoin's life.

101.    Defendant is liable for Tony Bowdoin's death.

102.    As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Benjamin and William Bowdoin have incurred property damages, including diminution of value and the cost of restoration and repair of the Bowdoin Property.

103.    Benjamin and William Bowdoin are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of the Bowdoin Property resulting from Defendant's actions as alleged herein.

## COUNT III – NUISANCE

104.    Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

105.    The dumping of coal ash and other operations at Plant Scherer have resulted in discharges of toxic, hazardous, and radioactive substances into the area surrounding Plant Scherer, including the well water and air on the Bowdoin Property.

106.    These discharges have resulted and continue to result in the contamination and accumulation of toxic metals and radionuclides on the Bowdoin Property.

107.    As a result, Plaintiffs have suffered injuries.

108.    Benjamin and William Bowdoin are entitled to the full use and enjoyment of the Bowdoin Property free from pollutant discharges caused by Defendant.  The ongoing discharges of pollutants have and are continuing to unreasonably and substantially interfere with Benjamin and William Bowdoin's use and enjoyment of the Bowdoin Property.

109.    The ongoing discharges of pollutants have caused and are continuing to cause Plaintiffs to suffer hurt, inconvenience, and/or damage within the meaning of O.C.G.A. § 41-1-1.

110.    The ongoing discharges constitute a continuing abatable nuisance, pursuant to O.C.G.A. § 41-1-5, for which Defendant is responsible.

111.    Because Defendant created the nuisance, Plaintiffs are not required to give Defendant notice to abate the nuisance before filing this action.

112.    The nuisance caused by Defendant is an actual and proximate cause of Plaintiffs' damages and injuries.

113.    The Bowdoin Property has been negatively impacted by Defendant's creation of and failure to abate the nuisance.

114.    Defendant's use and maintenance of Plant Scherer, as described above, constitutes a nuisance.  It is offensive to Benjamin and William Bowdoin's senses, so as to obstruct the free use of the Bowdoin Property.

115.    As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Tony Bowdoin suffered death.

116.    These injuries caused Tony Bowdoin's Estate to incur funeral expenses. Benjamin Bowdoin, as Executor of his father's Estate, is entitled to recover these costs.

117.    Benjamin Bowdoin and William Bowdoin, as the surviving children of Tony Bowdoin, bring this action to recover the full value of Tony Bowdoin's life.

118.    Defendant is liable for Tony Bowdoin's death.

119.    As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Benjamin and William Bowdoin have incurred property damages, including diminution of value and the cost of restoration and repair of the Bowdoin Property.

120.    Benjamin and William Bowdoin are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of the Bowdoin Property resulting from Defendant's actions as alleged herein.

### COUNT IV – TRESPASS

121.    Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

122.    Benjamin and William Bowdoin own and possess the Bowdoin Property.

123.    The failure by Defendant to properly construct and maintain the Coal Ash Pond and Defendant's creation and operation of Plant Scherer have caused coal ash pollutants and other toxins to enter the Bowdoin Property.

124.    The unpermitted invasion of the Bowdoin Property has resulted in the deterioration of the Bowdoin Property and the well water and air located thereon.

125.    Plaintiffs neither invited nor authorized Defendant's discharge of pollutants onto, over, and through the Bowdoin Property.

126.    Defendant's ongoing discharges of pollutants on the Bowdoin Property has interfered with Benjamin and William's rights to the exclusive possession, control, and use of their properties, and constitute trespass.

127.    As a result of these trespasses, Benjamin and William Bowdoin have suffered and continue to suffer damages for their inability to exclusively possess the Bowdoin Property and for the restoration of the Bowdoin Property to its original state.

128.    Plaintiffs have suffered damages in an amount to be proven at trial.

129.    As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Tony Bowdoin suffered death.

130.    These injuries caused Tony Bowdoin's Estate to incur funeral expenses. Benjamin Bowdoin, as Executor of his father's Estate, is entitled to recover these costs.

131.    Benjamin Bowdoin and William Bowdoin, as the surviving children of Tony Bowdoin, bring this action to recover the full value of Tony Bowdoin's life.

132.    Defendant is liable for Tony Bowdoin's death.

133.    As a direct and proximate result of Defendant's conduct, acts, omissions, and negligence, Benjamin and William Bowdoin have incurred property damages, including diminution of value and the cost of restoration and repair of the Bowdoin Property.

134.    Benjamin and William Bowdoin are also entitled to be compensated for nominal damages and their annoyance, inconvenience, and loss of use and enjoyment of the Bowdoin Property resulting from Defendant's actions as alleged herein.

## COUNT V – ATTORNEY'S FEES AND COSTS

135.    Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

136.    Pursuant to O.C.G.A. § 13-6-11, Defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the Plaintiffs unnecessary trouble and expense, for which Plaintiffs are entitled to recover their expenses of litigation, including reasonable attorney's fees and expenses, from Defendant.

137.    Because Defendant has failed and refused to abate the unlawful conditions on the Bowdoin Property, Plaintiffs were forced to incur attorney's fees and expenses in an effort to resolve this matter.  Plaintiffs will be forced to incur additional attorney's fees and expenses unless and until Defendant ceases and abates its unlawful and illegal use, occupation, and possession of the Bowdoin Property.

## COUNT VI – PUNITIVE DAMAGES

138.    Plaintiffs adopt and incorporate the preceding paragraphs above as if fully restated herein.

139.    Defendant knew of the defects in and its defective maintenance of the Coal Ash Pond, but willfully ignored them, concealed them from Plaintiffs, and failed to warn Plaintiffs about the scope of the defects, intentionally and willingly exposing Plaintiffs to toxic materials.

140.    Defendant made false and/or reckless statements about the Coal Ash Pond, including denying that the toxic materials were leaching onto the Bowdoin Property and into the well water thereon with the specific intent to induce Plaintiffs to refrain from taking action requiring Defendant to remediate the problem.

141.    Defendant knew its construction of Lake Juliette disrupted the pH balance in the environment, intentionally and willingly exposing Tony Bowdoin and the Bowdoin Property to toxic materials.

142.    Defendant's fraudulent and malicious behavior towards Plaintiffs constitutes a pattern of bad faith conduct wherein to make money and avoid lawsuits, Defendant deliberately conceals the known hazard its operation presents to residents in the surrounding area, such as unmitigated pollution of the Bowdoin Property, including the well water thereon.

143.    The actions and inactions of Defendant demonstrates willful misconduct, failure to warn, collusion, fraudulent concealment, malice, fraud, fraudulent inducement, wantonness, oppression, or that entire want of care that would raise the presumption of a conscious indifference to consequences, for which Plaintiffs seek punitive damages pursuant to O.C.G.A. § 51-12-5.1.

144.    The actions and inactions of Defendant demonstrates a specific intent to cause the intended harm authorizing punitive damages in excess of $250,000 pursuant to O.C.G.A. § 51-12-5.1.

**WHEREFORE**, Plaintiffs pray for the following relief against Georgia Power:

a.    Damages to Benjamin and William Bowdoin for the full value of Tony Bowdoin's life;

b.    Damages in an amount sufficient to compensate for the funeral expenses incurred by the Tony Bowdoin Estate;

c.    Damages sufficient to compensate Benjamin and William Bowdoin for current and ongoing property damages;

d.    Punitive damages in excess of $250,000;

e.    Trial by jury with respect to all issues triable to a jury;

f.    All costs and attorney's fees associated with the prosecution of this action;

g.    Interest on the judgment at the maximum rate allowed by law; and

h.    Such other and further relief as the Court deems just and proper.

Respectfully submitted, this __8th__ day of October 2021.

**STACEY EVANS LAW**

**/s/ Stacey Godfrey Evans**

Stacey Godfrey Evans
Georgia Bar No. 298555
Tiffany N. Watkins
Georgia Bar No. 228805
John Amble Johnson
Georgia Bar No. 229112

4200 Northside Parkway, NW
Bldg One; Suite 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile:  404-393-2828
sevans@staceyevanslaw.com
twatkins@staceyevanslaw.com
ajohnson@staceyevanslaw.com

**CONLEY GRIGGS PARTIN LLP**

**/s/ Cale H. Conley**
Cale H. Conley
Georgia Bar No. 181080
James T. Cox
Georgia Bar No. 296191

4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007
Phone: 404-467-1155
Fax: 404-467-1166
cale@conleygriggs.com
james@conleygriggs.com

*Counsel for Plaintiffs*

**ADAMS LAW FIRM**

**/s/ Brian P. Adams**
Brian P. Adams
Georgia Bar No. 142474
Mary Beth Hand
Georgia Bar No. 322836

598 D.T. Walton Sr. Way
Macon, GA 31201
Telephone: 478-238-0231
Facsimile: 478-216-9188
brian@brianadamslaw.com
mbhand@brianadamslaw.com